**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2021-WJM-CBS

RONALD MUKASA MAITEKI,

      Plaintiff,

v.

KNIGHT TRANSPORTATION INC.,
HIRE RIGHT INC.,
MARTEN TRANSPORT LTD, and
VOYAGER EXPRESS INC.,

      Defendants,

---

**ORDER GRANTING IN PART HIRE RIGHT'S MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS**

---

Plaintiff Ronald Mukasa Maiteki ("Plaintiff") brings this action against three of his former employers, Marten Transportation LTD ("Marten"), Knight Transportation, Inc. ("Knight"), and Voyager Express, Inc., as well as HireRight, Inc. ("HireRight"), a credit reporting agency that collects information on commercial drivers (collectively "Defendants").

Before the Court is HireRight's Motion for Partial Judgment on the Pleadings ("Motion"). (ECF No. 124.) For the reasons set forth below, the Motion is granted in part and denied in part.

## I. LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards as a Rule 12(b)(6) motion to dismiss. *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009). Under

Rule 12(b)(6), a defendant may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II.  FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and are taken as true for purposes of the instant Motion.

HireRight is a credit reporting agency that prepares a "Drive-A-Check" report which is relied on by commercial carriers to make hiring decisions.  (Consol. Compl. (ECF No. 157) ¶ 4.)  The Drive-A-Check report contains information about a commercial driver's former employers, criminal background, drug and alcohol testing, and driving record.  (*Id.* ¶ 5.)

Plaintiff is a commercial truck driver who was formerly employed by Swift, Knight, and Marten Transportation.  (*Id.* ¶ 8.)  Plaintiff claims that each of these employers

falsely reported to HireRight that he was involved in accidents during his employment, and that these accidents were placed on his Drive-A-Check record.  (*Id.* ¶¶ 18-20, 40.) Plaintiff alleges that, when he applied for jobs with other trucking companies, these false accidents were included on his Drive-A-Check report, and resulted in him not obtaining employment.  (*Id.* ¶¶ 30, 41.)

Upon learning of the false information on his Drive-A-Check report, Plaintiff repeatedly contacted HireRight and asked them to correct his Drive-A-Check record. Plaintiff alleges that he filed disputes with HireRight in September 2008, May 2009, May 2010, and on March 7, 2012.  (*Id.* ¶¶ 23, 30, 36, 42.)  Though these disputes triggered a duty to investigate the truthfulness of the information, HireRight never did any investigation, and the false information reported by Swift, Knight, and Marten was not removed from Plaintiff's Drive-A-Check record.  (*Id.* ¶¶ 25, 31, 37.)  Plaintiff contends that HireRight lacked the required procedures necessary to ensure maximum accuracy of their reports, and that they failed to conduct a reasonable inquiry into his complaints. (*Id.* ¶¶ 26-28.)

Plaintiff alleges that the false information on his Drive-A-Check record has resulted in him repeatedly being denied employment.  (*Id.* ¶¶ 30, 41.)  Plaintiff's inability to obtain gainful employment has allegedly caused him significant mental and emotional distress, and resulted in him being evicted from his apartment and his car being repossessed.  (*Id.*  ¶¶ 32-33, 64.)

## III.  ANALYSIS

On the facts set forth above, Plaintiff brings claims against HireRight under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. ("FCRA") and the Colorado

Consumer Credit Reporting Act ("CCCRA"), Colo. Rev. Stat. §§ 12-14.3-101 *et seq.*, as well as a common law claim for intentional infliction of emotional distress.  (Consol. Compl. pp. 18-46.)  HireRight moves for judgment in its favor on the intentional infliction of emotional distress claim, all CCCRA claims, and all FCRA claims which accrued before March 2012.  (ECF No. 124.)  The Court will address each of these bases for the Motion in turn below.

**A.     Intentional Infliction of Emotional Distress**

HireRight moves for judgment on the pleadings as to the claim for intentional infliction of emotional distress on the basis that Plaintiff has failed to allege sufficient facts to show that its conduct was extreme and outrageous.  (ECF No. 124 at 8-10.)

To state a claim for intentional infliction of emotional distress (which is also known as outrageous conduct), a plaintiff must allege sufficient facts to show: "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress."  *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 966-67 (Colo. App. 2009).  In Colorado, "[t]he tort of outrageous conduct was designed to create liability for a very narrow type of conduct."  *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006).  Consequently,

> the level of outrageousness required to create liability is extremely high.  Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient.  Only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice.

*Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003); *see also Churchey v. Adolph*

*Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) (facts must so arouse resentment against the defendant in average members of the community as to lead them to exclaim, "Outrageous!").

In this case, Plaintiff claims that HireRight engaged in extreme and outrageous conduct by repeatedly "parroting" the false information provided by Plaintiff's former employers without conducting any investigation into the accuracy of such information. (Consol. Compl. ¶¶ 26, 43, 199-201.)  In an earlier order, the Court held that Plaintiff failed to state a claim for intentional infliction of emotional distress against his former employers because no reasonable person could find that providing false information about Plaintiff's driving record constituted extreme and outrageous conduct.  (ECF No. 85 at 12-13.)  If providing false information is not outrageous conduct, the Court fails to see how simply repeating such information could meet this standard.  Thus, the Court has little difficulty concluding that no reasonable person could believe that HireRight's actions in this case constituted extreme and outrageous conduct.  *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (claim that employer coerced employee into conducting an illegal undercover narcotics investigation and laundering money to fund such investigation, and then firing employee for such investigation was not outrageous conduct); *Green*, 155 P.3d at 386-87 (allegations that employer sent untrained and under-qualified workers to perform dangerous acts was not sufficient to state a claim for outrageous conduct).

Accordingly, HireRight's Motion is granted as to Plaintiff's claim for intentional infliction of emotional distress and judgment shall be entered in favor of HireRight on this claim.

**B.     Public Records Claim**

Plaintiff brings claims against HireRight under multiple provisions of the FCRA, including § 1681k(a)(1) which governs the obligations imposed on consumer reporting agencies when they obtain information from public records.  (Consol. Compl. ¶¶ 108-110.)  Specifically, § 1681k requires that a credit reporting agency furnishing information that is a matter of public record and which is likely to have an adverse impact on the applicant, must either (1) notify the applicant of the fact that public record information is being reported along with the name and address of the person who requested the report, or (2) maintain "strict procedures" designed to ensure that any such reported information is "complete and up to date."  15 U.S.C. § 1681k.

The Court finds that judgment in HireRight's favor is appropriate on this claim because Plaintiff has not alleged that his Drive-A-Check record contained any information gleaned from public records that would be likely to have an adverse impact on his employment.  Rather, the record shows that the only public record information in the Drive-A-Check record was Plaintiff's criminal record, which showed that Plaintiff had no prior criminal incidents.  (ECF No. 132-2.)  Because reporting that Plaintiff did not have any criminal history was not likely to have a negative effect on his employability, Plaintiff has failed to allege sufficient facts to show that HireRight's obligations under § 1681k were triggered.  *See Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 331 (D. Conn. 2009) ("To fall within [§ 1681k], the consumer report in question must contain matters of public record that are likely to have an adverse effect upon a consumer's ability to obtain employment.").

Accordingly, HireRight's Motion is granted as to Plaintiff's claim under § 1681k.

6

C.    **Statute of Limitations**

HireRight moves for judgment on all claims that accrued before March 7, 2012 based on the statute of limitations.  (ECF No. 124 at 11-12.)  The parties agree that the FCRA has a two year statute of limitations, and that HireRight was first named in this action on March 7, 2014.

Plaintiff alleges that he notified HireRight that his Drive-A-Check record contained false information in September 2008, May 2009, May 2010, and on March 7, 2012.  (*Id.* ¶¶ 23, 30, 36, 42.)  HireRight argues that all complaints other than the March 7, 2012 complaint are barred by the statute of limitations as they occurred more than two years before this action was brought against it.  (ECF No. 124 at 12.)  In response, Plaintiff argues only that his March 7, 2012 complaint—and any subsequent complaints to HireRight—were timely; he makes no effort to show that the limitations period should be tolled for any complaint that pre-dated March 7, 2012, or that any other exception applies.  (ECF No. 132 at 11-12.)  As HireRight moves for judgment only on those complaints that occurred before March 7, 2012, the Court finds that Plaintiff has utterly failed to make any argument in opposition to the Motion.

Accordingly, HireRight's Motion is granted in so far as it seeks judgment on all complaints which occurred prior to March 7, 2012.

D.    **Preemption of Remaining Claims**

HireRight moves for judgment on all of Plaintiff's remaining claims under the CCCRA on the grounds that these claims are pre-empted by the FCRA.  (ECF No. 124 at 12.)

The FCRA is a comprehensive statutory scheme designed to regulate the

7

consumer reporting industry.  15 U.S.C. § 1681(a).  Congress recognized both the "vital

role" of credit reporting agencies like HireRight, and the "need to insure that consumer

reporting agencies exercise their grave responsibilities with fairness, impartiality, and a

respect for the consumer's right to privacy."  *Id.*  These agencies provide a critical

economic service by collecting and transmitting consumer credit information.  *See*

*Cushman v. Trans Union Corp.*, 115 F.3d 220, 223 (3d Cir. 1997).  But these agencies

can make mistakes by reporting inaccurate credit information, and such errors are

detrimental to the consumer, the creditor, and the economy as a whole.  *See id.*

Given these considerations, Congress determined that while credit reporting

agencies must be allowed to perform their function, a regulatory framework was

necessary to prevent errors in credit reporting and remedy those that do occur.  In 1970,

Congress accommodated both of these interests by enacting the FCRA, a

"comprehensive series of restrictions on the disclosure and use of credit information

assembled by consumer reporting agencies."  *FTC v. Manager, Retail Credit Co.*, 515

F.2d 988, 989 (D.C. Cir. 1975).  The FCRA "has been drawn with extreme care,

reflecting the tug of the competing interests," and courts must respect the balance

struck by Congress when interpreting its provisions.  *Nelson v. Chase Manhattan Mortg.*

*Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002).

As originally enacted, the FCRA generally permitted state regulation of the

consumer reporting industry.  With but few exceptions, the original preemption

provision, 15 U.S.C. § 1681t(a), preempted state laws only "to the extent that those laws

are inconsistent with any provision of [the FCRA]."  As part of the ongoing process of

fine-tuning this statutory scheme, Congress amended the FCRA with the Consumer

Credit Reporting Reform Act of 1996 ("CCRRA"), which added a strong preemption

provision, 15 U.S.C. § 1681t(b), to this comprehensive legislative framework.  Pub. L.

No. 104–208, 110 Stat. 3009, 3009-426 to -455.  The purpose of this new subsection

was, in part, to avoid a "patchwork system of conflicting regulations."  Michael Epshteyn,

Note, The Fair and Accurate Credit Transactions Act of 2003: Will Preemption of State

Credit Reporting Laws Harm Consumers?, 93 Geo. L.J. 1143, 1154 (2005).

Included within the new subsection added by the CCRRA is 15 U.S.C.

§ 1681t(b)(1)(B), the preemption provision at issue in this case, which states:

> No requirement or prohibition may be imposed under the
> laws of any State (1) with respect to any subject matter
> regulated under . . . (B) section 1681i of this title, relating to
> the time by which a consumer reporting agency must take
> any action, including the provision of notification to a
> consumer or other person, in any procedure related to the
> disputed accuracy of information in a consumer's file, except
> that this subparagraph shall not apply to any State law in
> effect on September 30, 1996.

Thus, the FCRA preempts state consumer reporting statutes when:  (1) the subject

matter of the state statute concerns matters regulated under § 1681i; and (2) the state

law took effect after September 30, 1996.  15 U.S.C. § 1681t(b)(1)(B).  The Court

agrees with HireRight that § 1681i covers the same subject matter as Colo. Rev. Stat.  §

12-14.3-106, and therefore the first element is satisfied.

With regard to the second element of preemption, HireRight argues that the

relevant CCCRA provision—Colo. Rev. Stat. § 12-14.3-106—took effect in 2002.  (ECF

No. 124 at 14.)  In support of this contention, it cites a decision from this Court in *Simon

v. DirectTV*, in which the plaintiff's CCCRA claim was dismissed on preemption grounds.

(Case No. 1:09-cv-852, ECF No. 36.)  However, *Simon* involved Colo. Rev. Stat. § 12-

14.3-105.3, the relevant portion of which became effective in 2002. (*Id.*) The relevant provision in this case is Colo. Rev. Stat. § 12-14.3-106, which took effect on January 1, 1996. *See* 1995 Colo. Legis. Serv. S.B. 95-122. As the CCCRA's provision at issue here took effect before the deadline in § 1681t(b)(1)(B), the Court finds that HireRight has failed to show that the second element of preemption is satisfied, and as a consequence its Motion is denied in this regard.

HireRight also argues that Plaintiff's claims under the willfulness and negligence provisions of the CCCRA are preempted because they are inconsistent with the wilfulness and negligence provisions of the FCRA and are therefore preempted under § 1681t(a). (ECF No. 124 at 14.) Conflict preemption occurs "where Congress has not completely displaced state regulation in a specific area" and where "state law is nullified to the extent that it actually conflicts with federal law." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982). The damages provisions of a state statute can be preempted as well as substantive law. *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1247 (10th Cir. 2006) (acknowledging that preemption of state law remedies in a CERCLA case may occur where such remedies conflict with congressional objectives); *see also Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 498-99 n.19 (1987).

If a plaintiff proves a willful violation of the FCRA, he is entitled to recover his actual damages or a statutory penalty between $100 and $1000, punitive damages as the court allows, and attorney's fees. 15 U.S.C. § 1681n. Under the CCCRA, a plaintiff who proves a willful violation is entitled to three times the amount of actual damages, reasonable attorney's fees, and costs. Colo. Rev. Stat. § 12-14.3-108(1). This Court has previously held that this inconsistency meant that the FCRA's willful damages

10

provision preempted the CCCRA in this regard. *Eller v. Trans Union LLC*, 2012 WL 786283, at *3 (D. Colo. March 9, 2012).  The Court adopts the analysis in that prior ruling and incorporates it here.  The Court therefore finds that Plaintiff's claim for willful damages under the CCCRA is preempted by the FCRA.

HireRight argues that this same analysis applies to Plaintiff's claim for negligent damages under the CCCRA.  If a plaintiff proves a negligent violation of the FCRA, he is entitled to recover his actual damages plus attorney's fees.  15 U.S.C. § 1681o. HireRight contends that the CCCRA's negligence provision is more generous, and allows Plaintiff to recover either actual damages or statutory damages of $1,000.  (ECF No. 124 at 15 (citing Colo. Rev. Stat. § 12-14.3-108(2).)  While the CCCRA does permit statutory damages for negligent violations of certain provisions, those provisions are not implicated here.  *See* Colo. Rev. Stat. § 12-14.3-108(2) (permitting a plaintiff to recover $1,000 in statutory damages for a negligent violation of §§ 12-14.3-106.5 & 106.6). Thus, it appears that there is no conflict between the amount of damages that Plaintiff will be allowed to recover under the FCRA or the CCCRA if he proves a negligent violation of either.  As there is no conflict between the damages provisions of the statutes at issue here, the Court finds that HireRight has not shown that Plaintiff's claim for negligent damages under the CCCRA is preempted.

Accordingly, HireRight's Motion is granted in so far as it seeks judgment on Plaintiff's claim for willful damages under the CCCRA, but denied as to Plaintiff's damages claim for a negligent violation of the CCCRA.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      HireRight's Motion for Partial Judgment on the Pleadings (ECF No. 124) is

GRANTED IN PART and DENIED IN PART;

2.      HireRight's Motion is GRANTED as to the following claims:

a.      Plaintiff's claim for intentional infliction of emotional distress;

b.      Plaintiff's FCRA claim brought under 15 U.S.C. § 1681k;

c.      All claims arising out of any report to HireRight that occurred before March

7, 2012; and

d.      Plaintiff's claim for a willful violation of the CCCRA.

At the time final judgment is entered, the Clerk shall enter judgment in

HireRight's favor on the above-listed claims;

3.      HireRight's Motion is DENIED as to Plaintiff's substantive claims for violations of

the CCCRA and Plaintiff's claim for damages related to a negligent violation of

the CCCRA.

Dated this 23rd day of January, 2015.

BY THE COURT:

William J. Martinez
United States District Judge